UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAUL WAYNE KING,<br><br>        Petitioner,<br><br>  v.<br><br>JOE LIZARRAGA,<br><br>        Respondent. | Case No. 16-cv-06453-HSG<br><br>**ORDER DENYING HABEAS PETITION; DENYING CERTIFICATE OF APPEALABILITY** |

Before the Court is the *pro se* petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 by petitioner Paul Wayne King, challenging the validity of a judgment obtained against him in state court. Respondent has filed an answer to the petition, Dkt. No. 7, and Petitioner has filed a traverse, Dkt. No. 12. For the reasons set forth below, the petition is denied.

## I. PROCEDURAL HISTORY

Petitioner was charged with one count of involuntary manslaughter (Cal. Penal Code § 192(b)) with an allegation that he personally inflicted great bodily injury (Cal. Penal Code § 12022.7(a)); one count of battery with serious bodily injury (Cal. Penal Code § 243(d)) with an additional count alleging that this battery was a hate crime (Cal. Penal Code § 422.75(a)); and one count of battery with the intent to interfere with civil rights (Cal. Penal Code §§ 242, 422.7(a)) with an allegation that he personally inflicted great bodily injury (Cal. Penal Code § 12022.7(a)). The information also alleged that Petitioner had three prior strike convictions (Cal. Penal Code § 677(b)(1)); three prior serious felony convictions (Cal. Penal Code § 667(a)(1)); and six prior prison term convictions (Cal. Penal Code § 667.5(b)).[1] Clerk's Transcript ("CT") at 99–109.[2] The

---

[1] The following priors were charged: February 15, 1985 robbery conviction (Cal. Penal Code § 211) (prior one – strike conviction); July 22, 1987 robbery conviction (Cal. Penal Code § 211)

prosecutor subsequently struck the great bodily injury allegation with respect to the manslaughter count. CT at 242–43. On March 14, 2012, the jury convicted Petitioner on all counts and found the hate crime allegation true but found the great bodily injury allegation not true. CT at 100–101. Prior to the jury verdicts being announced, Petitioner waived his right to a jury trial on his twelve prior conviction allegations. CT 255–56. The trial court subsequently found true all twelve prior conviction allegations. CT 4–9 and 260–67.

At the August 26, 2002 sentencing hearing, Petitioner requested that, for the purposes of sentencing, the trial court strike the prior conviction allegations. The trial court denied the request and sentenced Petitioner to a prison term of forty-six years to life: twenty-five years to life for the involuntary manslaughter charge as a third strike; plus fifteen years for the three serious felonies, plus six additional years for the prior prison terms. CT 285–90.

On August 6, 2004, the state appellate court affirmed the conviction, but reversed and remanded as to the sentence. CT 111–21. The appellate court struck the three prison priors (Cal. Penal Code § 667.5(b)) (priors seven, eight, nine), finding that they were based on the same prior convictions as the alleged serious felony priors (Cal. Penal Code § 667.5(a)) (priors four, five, six). The appellate court also found that the evidence presented was insufficient to support a finding that the July 1990 conviction (prior six) was a serious felony, and remanded the case for retrial on whether the July 1990 conviction qualified as a serious felony. CT 120–21. The appellate court also corrected several errors in the abstract of judgment. CT 121.

---

(prior two – strike conviction); July 3, 1990 assault with a deadly weapon conviction (Cal. Penal Code § 245) (prior three – strike conviction); February 15, 1985 robbery conviction (Cal. Penal Code § 211) (prior four – serious felony conviction); July 22, 1987 robbery conviction (Cal. Penal Code § 211) (prior five – serious felony conviction); July 3, 1990 assault with a deadly weapon conviction (Cal. Penal Code § 245) (prior six – serious felony conviction); February 15, 1985 robbery conviction (Cal. Penal Code § 211) (prior seven – prior prison term conviction); ); July 22, 1987 robbery conviction (Cal. Penal Code § 211) (prior eight – prior prison term conviction); July 3, 1990 assault with a deadly weapon conviction (Cal. Penal Code § 245) (prior nine – prior prison term conviction); July 14, 1993 unauthorized possession of a controlled substance conviction (Cal. Health & Safety Code § 11377) (prior ten – prior prison term conviction); May 31, 1995 unauthorized possession of a controlled substance conviction (Cal. Health & Safety Code § 11377) (prior eleven – prior prison term conviction); and August 6, 1997 unlawful possession of weapon conviction (Cal. Penal Code § 12020) (West. 1997) (prior twelve – prior prison term conviction). CT 260–67.

[2] The Clerk's Transcript has been filed as Exhibit 1 to the Answer.

On January 11, 2005, at trial following remand, a jury found that the July 1990 conviction constituted a prior serious felony. CT 13–18.

On March 1, 2005, Petitioner filed a motion pursuant to *People v. Superior Court* (*Romero*), 13 Cal. 4th 497 (Cal. 1996), requesting that the court strike the two strike convictions arising out of the 1985 robbery conviction and the 1987 robbery conviction, and sentence Petitioner pursuant to the second strike provisions set forth in section 1170.12 of the California Penal Code. CT 294–301. The Court denied this motion, CT 315–16, and sentenced Petitioner to an overall term of forty-three years to life: twenty-five years to life for the involuntary manslaughter conviction as a third strike; plus an additional consecutive fifteen years for the three prior serious felony convictions (priors four, five, and six); plus an additional consecutive three years for the three prior prison terms convictions (priors ten, eleven, and twelve). The Court stayed the sentence of twenty-five years to life for the battery with serious bodily injury conviction; the sentence of twenty-five years to life for the hate crime; and the sentence for priors seven, eight, and nine. CT 315–18.

On December 20, 2013, Petitioner filed a petition for resentencing pursuant to section 1170.126 of the California Penal Code, arguing that he was eligible for resentencing because, *inter alia*, his current offenses were not serious or violent felonies. CT 25–39. The trial court denied this motion at a hearing on May 30, 2014, finding that the convictions were for serious felonies. CT 347; Reporter's Transcript ("RT")[3] 8–16.

On March 15, 2016, the California Court of Appeal affirmed the denial of the resentencing petition. *People v. King*, 2016 WL 1039461, A142260 (Cal. Ct. App. Mar. 15, 2016). On June 22, 2016, the California Supreme Court denied review. Answer, Ex. 8.

On November 3, 2016, Petitioner filed the instant federal habeas petition, challenging the denial of the resentencing petition. Dkt. No. 1 ("Pet.").

//

//

---

[3] The Reporter's Transcript has been filed as Exhibit 2 to the Answer.

3

## II. STATEMENT OF FACTS

The following factual background is taken from the March 15, 2016 opinion of the California Court of Appeal:

> In 2001, appellant was charged with involuntary manslaughter and battery. Witnesses at trial testified that appellant was in a bar when Brad Davis, an African–American man, entered with two Caucasian women. (*People v. King* (Aug. 6, 2004, A101379) 2004 Cal.App.Unpub. LEXIS 7313, *3 [nonpub. opn.] (*King I*).) [FN 2] Appellant gave Davis "dirty looks," then went over to talk to him and the two soon stepped out of the back door. (*Id.,* at pp. *4, *8.) There was a "'popping sound,'" then appellant ran through the bar and Davis was found lying on the ground with his hands in his pockets. (*Id.* at pp. *5–*6.) Appellant had tattoos associated with White supremacist groups and told an acquaintance that "he 'hit the nigger one time. [Davis] went down, and that was the end of it.' [Appellant] said he hit Davis 'because he didn't like the fact that he was with a White girl.'" (*Id.* at pp. *8, *10.)
>
> > FN 2: We, like the parties, take facts relating to the trial from our opinion on appellant's prior appeal. (*People v. Woodell* (1998) 17 Cal.4th 448, 457 ["appellate opinions, in general, are part of the record of conviction that the trier of fact may consider in determining whether a conviction qualifies under the sentencing scheme at issue"].)
>
> Davis never regained consciousness and died six days later. (*King I, supra,* 2004 Cal.App.Unpub. LEXIS 7313 at p. *7.) A forensic pathologist "opined that Davis suffered blunt head trauma to the back of his head, resulting in skull fractures and a 'contrecoup injury' to the brain. The cause of death was craniocerebral injuries due to blunt head trauma. [The pathologist] stated that a person who was pushed and fell backward, hitting the back of his head, could 'very well' sustain a contrecoup-type injury. Davis also sustained injuries to his left lower lip and cheek area, which could have resulted from being punched. [The pathologist] said a contrecoup injury is less likely to occur from a person merely collapsing and falling straight down and hitting their head, and [the pathologist] found no factors that would have caused Davis to collapse." (*Ibid.*) "The thrust of the defense was that [appellant] committed no offense against Davis, that he had nothing to do with Davis falling to the ground, and that the evidence regarding his tattoos served only to inflame and prejudice the jury against him." (*Id.* at p. *12.)
>
> The jury convicted appellant of involuntary manslaughter (§ 192, subd. (b)); battery inflicting serious bodily injury (§ 243, subd. (d)); and battery committed as a "hate crime" (§§ 242, 422.7, subd. (a)). [FN 3] However, the jury found not true an allegation that appellant personally inflicted great bodily injury (§ 12022.7) in connection with the hate crime battery. [FN 4]
>
> > FN 3: "[Section] 422.7 ... [is one] of California's 'hate crime' statutes." (*In re M.S.* (1995) 10 Cal.4th 698, 706.)
> >
> > FN 4: The information did not allege a great bodily injury enhancement in connection with the battery inflicting serious bodily injury count. The information initially alleged a great bodily injury enhancement in connection with the involuntary manslaughter count, but this allegation was struck prior to trial.
>
> Appellant waived his right to a jury trial on three allegations that he was convicted of a serious felony and had a prior conviction for a serious felony (§ 667, subd. (a)(1)). The trial court found these allegations true.

4

> In 2004, this court affirmed the convictions while reversing and remanding on sentencing issues not relevant here. (*King I, supra,* 2004 Cal.App.Unpub. LEXIS 7313 at p. *48.) Following subsequent proceedings, appellant was sentenced to a prison term of 25 years to life for involuntary manslaughter, plus additional years for prior convictions and prison terms. The sentences on the battery convictions were stayed pursuant to section 654.
>
> In 2013, appellant filed a petition for resentencing under section 1170.126, arguing none of his current offenses are serious or violent felonies. The trial court denied the petition.

*King*, 2016 WL 1039461, at *1.

## III. DISCUSSION

### A. Standard of Review

A petition for a writ of habeas corpus is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). This Court may entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000). Additionally, habeas relief is warranted only if the constitutional error at issue "'had substantial and injurious effect or influence in determining the jury's verdict.'" *Penry v. Johnson*, 532 U.S. 782, 795 (2001) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)).

Section 2254(d)(1) restricts the source of clearly established law to the Supreme Court's jurisprudence. "[C]learly established Federal law, as determined by the Supreme Court of the United States" refers to "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Williams*, 529 U.S. at 412. A state court decision is "contrary to" clearly established Supreme Court precedent if it "applies a rule that

5

contradicts the governing law set forth in [the Supreme Court's] cases," or if it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [its] precedent." *Id.* at 405–06. "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411. "A federal court may not overrule a state court for simply holding a view different from its own, when the precedent from [the Supreme Court] is, at best, ambiguous." *Mitchell v. Esparza*, 540 U.S. 12, 17 (2003).

The state court decision to which § 2254(d) applies is the "last reasoned decision" of the state court. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803–04 (1991); *Barker v. Fleming*, 423 F.3d 1085, 1091–92 (9th Cir. 2005). The final state court decision from the California Supreme Court summarily denied Petitioner's petition for review. The California Court of Appeal was the last reasoned state court decision that addressed the claims raised by Petitioner. Accordingly, in reviewing the habeas petition, this Court reviews the California Court of Appeal's decision. *See Ylst*, 501 U.S. at 803–04; *Barker*, 423 F.3d at 1091–92.[4]

**B.   Petitioner's Claims**

Petitioner claims that the state court's conclusion that he is ineligible for resentencing pursuant to section 1170.126 of the California Penal Code failed to give effect to the jury's not true finding on the great bodily injury enhancement alleged in connection with the hate crime

---

[4] Although *Ylst* was a procedural default case, the "look through" rule announced there has been extended beyond the context of procedural default. *Barker*, 423 F.3d at 1092 n.3 (citing *Lambert v. Blodgett*, 393 F.3d 943, 970 n.17 (9th Cir. 2004), and *Bailey v. Rae*, 339 F.3d 1107, 1112–13 (9th Cir. 2003)). The look through rule is applicable here as the Ninth Circuit has held that "it is a common practice of the federal courts to examine the last reasoned state decision to determine whether a state-court decision is 'contrary to' or 'an unreasonable application of' clearly established federal law" and "it [is] unlikely that the Supreme Court intended to disrupt this practice without making its intention clear." *Cannedy v. Adams*, 706 F.3d 1148, 1158 (9th Cir.), *amended*, 733 F.3d 794 (9th Cir. 2013).

battery count, thereby (1) depriving him of his right to a jury trial on prior enhancements in violation of *Apprendi v. New Jersey*, 530 U.S. 466 (2000); (2) denying him due process; and (3) violating the principles of double jeopardy, res judicata, and collateral estoppel. *See* Pet. and Dkt. No. 6 (Order to Show Cause). The state court rejected these claims as follows:

> Appellant contends the jury's not true finding on the great bodily injury enhancement alleged in connection with the hate crime battery count conclusively establishes that he did not personally inflict great bodily injury on Davis for purposes of section 1192.7, subdivision (c)(8) in connection with any count. We conclude the jury's not true finding is inconsistent with its involuntary manslaughter guilty verdict and therefore the finding does not preclude the trial court's determination that appellant personally inflicted great bodily injury when committing involuntary manslaughter.
>
> "[I]n 2012, the electorate passed Proposition 36. The Act authorizes prisoners serving third-strike sentences whose 'current' offense (i.e., the offense for which the third-strike sentence was imposed) is not a serious or violent felony to petition for recall of the sentence and for resentencing as a second-strike case." (*People v. Johnson* (2015) 61 Cal.4th 674, 679–680.) The parties agree that appellant is ineligible for resentencing only if his conduct in committing involuntary manslaughter (the conviction for which he is serving a life sentence) elevated the offense to a serious or violent felony because he personally inflicted great bodily injury during the commission of the offense. (§ 1192.7, subd. (c)(8) ["'serious felony'" includes "any felony in which the defendant personally inflicts great bodily injury on any person, other than an accomplice"].)
>
> Appellant notes that all three counts arose from a single act—when appellant punched Davis—and argues the jury's not true finding on the great bodily injury enhancement therefore "applies in equal force to each offense." However, this is not the case if the not true finding is inconsistent with one of the jury's guilty verdicts. "'[I]f an acquittal of one count is factually irreconcilable with a conviction on another, or if a not true finding of an enhancement allegation is inconsistent with a conviction of the substantive offense, effect is given to both.'" (*People v. Avila* (2006) 38 Cal.4th 491, 600.) "[W]here truly inconsistent verdicts have been reached, '[t]he most that can be said ... is that the verdict shows that either in the acquittal or the conviction the jury did not speak their real conclusions, but that does not show that they were not convinced of the defendant's guilt.'" (*U.S. v. Powell* (1984) 469 U.S. 57, 64–65; *see also Avila, supra,* at p. 600 ["It is possible that the jury arrived at an inconsistent conclusion through 'mistake, compromise, or lenity.'"].) Accordingly, if the not true finding is inconsistent with the jury's guilty verdicts, appellant's argument that the finding is conclusive with respect to the other counts fails.
>
> Appellant first argues that serious bodily injury (§ 243, subd. (d)) is not equivalent to great bodily injury, a contention the People dispute. (Compare *People v. Taylor* (2004) 118 Cal.App.4th 11, 25 ["In these circumstances, the jury's finding of serious bodily injury cannot be deemed equivalent to a finding of great bodily injury."], with *People v. Hawkins* (1993) 15 Cal.App.4th 1373, 1376 ["great bodily injury, as defined in section 12022.7, is an element of the crime of battery under section 243, subdivision (d)"].) We find it unnecessary to resolve this question. By the involuntary manslaughter verdict, the jury found appellant caused Davis's death. Appellant does not, and cannot, argue that death is not a great bodily injury. (*People v. Wilson* (2013) 219 Cal.App.4th 500, 511 ["by causing [the victim's] death, [the defendant] necessarily caused him great bodily injury"].)
>
> Appellant also argues the manslaughter verdict found only that he *proximately* caused

Davis's death. As appellant notes, to find the personal infliction of great bodily injury "'the defendant must be the direct, rather than [the] proximate, cause of the victim's injuries.' " (*People v. Elder* (2014) 227 Cal.App.4th 411, 418.) However, appellant does not dispute that, if his punch caused Davis to fall and the fall caused the injuries resulting in his death, he directly and personally inflicted great bodily injury on Davis. (See *People v. Modiri* (2006) 39 Cal.4th 481, 493 ["the statute calls for the defendant to administer a blow or other force to the victim, for the defendant to do so directly rather than through an intermediary, and for the victim to suffer great bodily injury as a result"].)

Appellant instead contends "the jury may have questioned whether a single punch could have knocked Davis backwards to the ground, as necessary to find [appellant] personally inflicted the injuries to Davis's head, or whether Davis more likely tripped, slipped, or simply fell while trying to back away from [appellant] after being hit, all of which would support the not true finding." As an initial matter, even the latter scenario may constitute the personal infliction of injury. (*People v. Dominick* (1986) 182 Cal.App.3d 1174, 1185, 1210–1211 [finding personal infliction of injury where, while the defendant restrained the victim so an accomplice could hit her, the victim "somehow managed to break free and fell off the roadway partway down the mountainside," where she sustained injuries].) In any event, the record does not support this scenario. Two witnesses were outside when appellant punched Davis; although they did not witness the punch itself, they looked after hearing it and saw Davis on the ground. (*King I, supra,* 2004 Cal.App.Unpub. LEXIS 7313 at pp. *5–*6.) Appellant told an acquaintance that he "'hit [Davis] one time'" and "'[Davis] went down.'" (*Id.* at p. *8.) As stated in our prior opinion: "There was no evidence presented to support a theory that defendant was guilty of a battery, but that the serious injuries suffered by Davis resulted from some other cause." (*Id.* at p. *41.) Appellant's defense at trial—that "he had nothing to do with Davis falling to the ground" (*id.* at p. *12)—is consistent with this understanding of the record.

Accordingly, we conclude the jury's guilty verdict on the involuntary manslaughter count is inconsistent with its not true finding on the great bodily injury enhancement alleged in connection with the hate crime battery count. [FN 5] Because the not true finding is inconsistent with the guilty verdict, it does not preclude a finding that the involuntary manslaughter conviction constitutes a serious felony under section 1192.7, subdivision (c)(8). [FN 6]

> FN 5: This case is therefore distinguishable from *People v. Arevalo* (2016) 244 Cal.App.4th 836, opinion modified 2016 Cal.App. LEXIS 180, decided after oral argument. In *Arevalo,* the defendant was convicted after a bench trial of grand theft auto and driving a vehicle without the owner's consent, but acquitted of firearms possession and allegations that he was armed with a firearm were found not true. (*Id*. at p. 843.) Subsequently, a different judge found the defendant ineligible for Proposition 36 resentencing on the ground that he had been armed with a weapon during the commission of the offenses. (*Id.* at pp. 841, 844.) The Court of Appeal reversed, concluding this determination was precluded by the acquittal and not true findings. (*Id.* at p. 842.) In *Arevalo,* unlike in this case, the underlying verdicts and enhancement findings were not inconsistent with each other.

> FN 6: This conclusion also defeats appellant's argument that his sentence enhancements under section 667, subdivision (a)(1) were unauthorized because none of his current convictions were serious felonies under section 1192.7 (see § 667, subds. (a)(1), (a)(4)).

For the same reason, appellant's argument that the serious felony finding violates principles of collateral estoppel and double jeopardy fails. Where "'the same jury reached inconsistent results ... principles of collateral estoppel—which are predicated on the assumption that the jury acted rationally and found certain facts in reaching its verdict—

8

are no longer useful.'" (*People v. Santamaria* (1994) 8 Cal.4th 903, 915; see also *id.* at p. 912, fn. 3 ["Collateral estoppel, which applies to relitigation of factual *issues,* is analytically distinct from double jeopardy, which applies to retrial of *offenses*. Thus, collateral estoppel is conceptually separate from double jeopardy, but ... when applicable, it is a component of the double jeopardy clause of the Fifth Amendment."].) Similarly, we reject appellant's argument that the not true finding renders this a case in which "the trial court effectively substituted its own erroneous legal determination for the express factual findings of the jury" in violation of the right to jury trial. (*Taylor, supra,* 118 Cal.App.4th at p. 30; see also *People v. Berry* (2015) 235 Cal.App.4th 1417, 1428 [because "the ruling that a defendant is ineligible for resentencing does not expose him to any potential increase in his sentence ..., section 1170.126 qualifies as an act of legislative lenity, which does not trigger Sixth Amendment right to a jury determination of disputed facts"].)

*King*, 2016 WL 1039461, at *2–*4.

### 1. *Apprendi* **Claim**

Petitioner argues that his Sixth Amendment right to a jury trial on his prior enhancements, as set forth in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), was violated when the state court concluded that he was ineligible for resentencing pursuant to Section 1170.126.[5] Pet. at 10–15. Respondent argues that *Apprendi* is inapplicable to Section 1170.126 resentencing petitions because *Apprendi* applies to facts that increase the penalty for a crime beyond the prescribed statutory maximum, and Section 1170.126 can only reduce a sentence. Dkt. No. 7-1 at 9–11.

After carefully reviewing the record, the Court finds that the state court's denial of this claim was not contrary to, nor did it involve an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.[6]

First, assuming arguendo that the state court erred in finding Petitioner ineligible for resentencing pursuant to Section 1170.126, this would constitute an error of state sentencing law which does not warrant federal habeas relief. *See Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (federal habeas corpus relief does not lie for errors of state law); *Estelle v. McGuire*, 502 U.S. 62,

---

[5] Petitioner mistakenly alleges that the right to a jury trial arises out of the Fifth Amendment. The right to a jury trial arises out of Article III, Section 2, and the Sixth Amendment, of the federal constitution. U.S. Const. art. III, § 2; amend. VI.

[6] Although the state court did not cite *Apprendi* in its opinion, it did directly address and reject Petitioner's Sixth Amendment claim:
> Similarly, we reject appellant's argument that the not true finding renders this a case in which "the trial court effectively substituted its own erroneous legal determination for the express factual findings of the jury" in violation of the right to jury trial.

*King*, 2016 WL 1039461, at *4 (citation omitted). In rejecting the Sixth Amendment claim, the state court cited to *People v. Berry*, 235 Cal. App.4th 1417, 1428 (Cal. Ct. App. 2015), and noted in the parenthetical that "section 1170.126 . . . does not trigger Sixth Amendment right to a jury determination of disputed facts." *Id.*

67–68 (1991); *see also Oliver v. Beard*, No. CV 14–5948 AB (RZ), 2015 WL 4606574, at *3 (C.D. Cal. Jan. 8, 2015) (Zarefsky, M.J.) (California state courts' interpretation of California's Three Strikes Law and Cal. Penal Code § 1170.126 does not warrant federal habeas relief unless arbitrary or capricious), *adopted by Oliver v. Beard*, 2015 WL 4608614 (C.D. Cal. Jul. 29, 2015).

Second, *Apprendi* is inapplicable to Section 1170.126 resentencing hearings. *Apprendi* holds that any fact increasing the penalty for a crime beyond the statutory maximum, other than the fact of a prior conviction, must be tried to a jury and proven beyond a reasonable doubt. *Apprendi*, 530 U.S. at 490. Petitioner argues that Section 1170.126 sets a new maximum term – a "second-strike sentence" — for inmates sentenced as third strikes offenders under the former Three Strikes Law. He further contends that a finding of ineligibility for resentencing under Section 1170.126 may therefore only be based on findings that were proven to a jury beyond a reasonable doubt, and that the jury's inconsistent findings in his underlying criminal case regarding bodily injury preclude a finding of ineligibility.

The Court disagrees. Section 1170.126 is part of the Three Strikes Reform Act of 2012. The Act provides that a prisoner who is serving an indeterminate life sentence imposed under the former Three Strikes Law for a current crime that is not a "serious or violent felony," and who is otherwise not disqualified, may have his or her sentence "recalled" and reduced and be re-sentenced as a "second strike offender," unless the reviewing trial court determines that resentencing "would pose an unreasonable risk of danger to public safety." *See People v. Osuna*, 171 Cal. Rptr. 3d 55, 58–59 (Cal. Ct. App. 2014). As such, Section 1170.126 only allows for a sentence reduction. Section 1170.126 does not increase a prisoner's sentence beyond the statutory maximum, or increase his sentence at all.

California courts have clearly held that Section 1170.126 does not affect the maximum term for Three Strikes offenses and that Section 1170.126 resentencing petitions do not implicate the Sixth Amendment:

> The maximum sentence to which Kaulick, and those similarly situated to him, is subject was, and shall always be, the indeterminate life term to which he was originally sentenced. While Proposition 36 presents him with an opportunity to be resentenced to a lesser term, unless certain facts are established, he is nonetheless still subject to the third strike sentence based on the facts established at the time he was originally sentenced. As such, a

10

> court's discretionary decision to decline to modify the sentence in his favor can be based on any otherwise appropriate factor (i.e., dangerousness), and such factor need not be established by proof beyond a reasonable doubt to a jury. Kaulick would interpret the retrospective part of the [Three Strikes Reform] Act to mean that every petitioner who meets the eligibility requirements for resentencing is immediately entitled to the recall of his or her sentence, with resentencing to a second-strike term the presumptive sentence, and resentencing to the current third-strike term available only on proof beyond a reasonable doubt of the additional factor of dangerousness. There is nothing in the statutory language to support this interpretation.

*People v. Sup. Ct. (Kaulick)*, 155 Cal. Rptr. 3d 856, 874 (Cal. Ct. App. 2013); *accord People v. Berry*, 186 Cal. Rptr. 3d 89, 97 (Cal. Ct. App. 2015) ("section 1170.126 qualifies as an act of legislative lenity, which does not trigger Sixth Amendment right to a jury determination of disputed facts"), *disapproved of on other grounds by People v. Estrada*, 3 Cal. 5th 661, 675 (Cal. 2017); *Osuna*, 171 Cal. Rptr. 3d at 70 ("A finding an inmate is not eligible for resentencing under section 1170.126 does not increase or aggravate that individual's sentence; rather, it leaves him or her subject to the sentence originally imposed. . . . a determination of eligibility under section 1170.126 does not implicate the Sixth Amendment"); *People v. Blakely*, 171 Cal. Rptr. 3d 70, 83–85 (Cal. Ct. App. 2014) (section 1170.126 ineligibility finding does not increase sentence and does not implicate Sixth Amendment). The California courts' determination that Section 1170.126 proceedings only allow for sentence reductions and do not establish a new statutory maximum for the relevant offense is binding on this court. *See Mullaney v. Wilbur*, 421 U.S. 684, 691 n.11 (1975) ("state courts are the ultimate expositors of state law" and federal court is bound by state court's construction); *Oxborrow v. Eikenberry*, 877 F.2d 1395, 1399 (9th Cir. 1989) (federal courts are bound by state court rulings on questions of state law). Accordingly, in the context of Section 1170.126 proceedings, *Apprendi* is inapplicable because Section 1170.126 does not increase the penalty for a crime beyond the statutory maximum.

The Court also finds that the state court's denial of this claim was not based on an unreasonable determination of the facts presented in the State court proceeding. The state court found that even in the alternative scenario proposed by Petitioner — he only proximately caused Davis's death in that Davis died because he slipped, tripped or fell while trying to back away from Petitioner — Petitioner would still be liable for the personal infliction of great bodily injury, the necessary prerequisite for a finding of ineligibility. Pursuant to the relevant battery statute, if

1    Petitioner's punch caused Davis to fall and the fall caused the injuries resulting in his death, then
2    Petitioner directly and personally inflicted great bodily injury on Davis. *King*, 2016 WL 1039461,
3    at *3. In addition, two witnesses testified that they heard the punch and saw Davis fall to the floor
4    afterwards, contradicting Petitioner's claim that he did not directly cause Davis' death. *Id.*

Petitioner is not entitled to habeas relief on this claim.

### 2. Due Process Claim

Petitioner argues that the trial court's determination that he was ineligible for resentencing violated his due process rights because the ineligibility determination contravened the rule that inconsistent verdicts must be allowed to stand. However, no Supreme Court precedent, or authority from the Ninth Circuit, has held that inconsistent verdicts require a resentencing court to only give effect to the verdict favorable to the defendant.

Petitioner argues that *United States v. Powell*, 469 U.S. 57 (1984), requires a court to allow inconsistent verdicts to stand, and that the state court's finding of resentencing ineligibility violated this principle because it necessarily negated the jury's not true finding on the great bodily injury enhancement. Petitioner misreads *Powell*. In *Powell*, the respondent was charged with conspiracy to possess cocaine with intent to distribute, or possession of cocaine, as well as the compound offenses of using the telephone in "committing and in causing and facilitating" the felony of conspiring to possess with intent to distribute and of possession with intent to distribute cocaine. The jury acquitted the respondent of conspiracy to possess cocaine with intent to distribute, or possession of cocaine, but found respondent guilty of the telephone facilitation charges. *Id.* The respondent argued that she was entitled to reversal of the telephone facilitation convictions because the verdicts were inconsistent in that the predicate felonies of conspiracy to possess or possession were elements of the telephone facilitation crime, and that the acquittal of the predicate felony was inconsistent with a conviction on the telephone facilitation charges. The Ninth Circuit agreed, finding that the acquittal necessarily indicated that there was insufficient evidence to support a conviction for that crime. The Supreme Court reversed, finding that the court of appeals improperly created an exception to the *Dunn* rule. The *Dunn* rule prohibits a criminal defendant from attacking a conviction on the grounds that the conviction is inconsistent

12

with the jury's acquittal on a separate count. The Supreme Court reaffirmed the *Dunn* rule, stating that there was no reason to vacate the respondent's conviction merely because the verdicts could not rationally be reconciled, explaining that while the respondent was allowed the benefit of her acquittal on the counts on which she was acquitted, she was also required to accept the burden of conviction on the counts on which the jury convicted. *Id.* at 69.

The state court's finding that Petitioner was ineligible for resentencing pursuant to Section 1170.126 is consistent with *Powell*. As Respondent correctly points out, the fact that Petitioner was convicted of punching Davis in the face and thereby causing his death necessarily meant that the jury found Petitioner had inflicted great bodily injury and is a sufficient basis for finding him ineligible for resentencing.[7] The state court's denial of Petitioner's resentencing petition is consistent with the *Dunn* rule set forth in *Powell*, which holds that a criminal defendant is allowed the benefit of her acquittal on the counts on which she was acquitted, but also required to accept the burden of conviction on the counts on which the jury convicted. *Powell*, 469 Cal. Rptr. at 69. The state court permissibly found Petitioner ineligible for resentencing pursuant to Section 1170.126 based on Petitioner's convictions for battery inflicting serious bodily injury and involuntary manslaughter.

Petitioner also claims that several Supreme Court cases support his argument that that he has a right to a jury trial (or an evidentiary hearing) on the question of whether the state court improperly found in the Section 1170.126 proceeding that he had been convicted of a felony, given the inconsistent verdicts in the underlying criminal case. Dkt. No. 12 at 15–17 (*citing Alleyne v. United States*, 570 U.S. 99 (2013), *Descamps v. United States*, 570 U.S. 254 (2013), *Ring v. Arizona*, 536 U.S. 594, 602 (2002), *Taylor v. United States*, 495 U.S. 575, 599–600 (1990), and *Shepard v. United States*, 544 U.S. 13 (2005)). The cases cited by Petitioner are specific to unrelated federal statutes and are inapplicable here.

---

[7] To the extent that Petitioner alleges that California caselaw requires a Section 1170.126 resentencing court to make eligibility determinations that give effect to inconsistent verdicts, *see* Dkt. No. 12 at 15, such allegation fails to state a cognizable claim for federal habeas relief. Federal habeas corpus relief does not lie for errors of state law. *See Swarthout*, 562 U.S. at 219; *Estelle*, 502 U.S. at 67–68.

13

Where no "clearly established federal law" in the form of a Supreme Court holding "squarely establishes" an applicable rule, or "squarely addresses" the issue raised, a federal habeas court must defer to the state court's denial of such a claim because such a denial cannot be "contrary to, nor an unreasonable application of" non-existent Supreme Court precedent. *Knowles v. Mirzayance*, 556 U.S. 111, 121–23 (2009) (holding that it is not an "unreasonable application of clearly established Federal law" for state court to decline to apply specific legal rule that has not been "squarely established" by Supreme Court); *see also Wright v. Van Patten*, 552 U.S. 120, 125–26 (2008) (where Supreme Court cases do not "squarely address" or give clear answer to federal habeas question presented, it cannot be said that state court unreasonably applied clearly established federal law); *Carey v. Musladin*, 549 U.S. 70, 76 (2006) (where Supreme Court has never applied existing precedents to precise facts, and proposed issue is "open question" in Supreme Court jurisprudence, habeas relief not available under AEDPA). Accordingly, habeas relief is denied on this claim.

### 3. Double Jeopardy Claim

Petitioner argues that because the state court's Section 1170.126 ineligibility finding was predicated on a finding that Petitioner had inflicted great bodily injury, the ineligibility finding subjected him to double jeopardy, and also violated the doctrines of res judicata and collateral estoppel. Petitioner argues that the resentencing proceeding was the functional equivalent of a second formal trial on the same offense in that Petitioner was subjected to a second factfinding, this time by the resentencing judge, on the great bodily injury claim. Pet. at 16–17. Similarly, Petitioner argues that the resentencing court's ineligibility finding violated the principles of res judicata and collateral estoppel because the resentencing proceeding involved the same issue (infliction of great bodily injury) as the underlying criminal proceeding. *Id.* Respondent responds that the resentencing hearing was not a new trial on the underlying charges.

After carefully reviewing the record, the Court finds that the state court's denial of this claim was not contrary to, nor did it involve an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States. The state court's ruling also did not involve an unreasonable application of the facts presented.

14

The Double Jeopardy Clause guarantees that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb," U.S. Const. amend. V, and is applicable to the states through the Fourteenth Amendment, *Benton v. Maryland*, 395 U.S. 784 (1969). The guarantee against double jeopardy protects against (1) a second prosecution for the same offense after acquittal or conviction, and (2) multiple punishments for the same offense. *See Witte v. United States*, 515 U.S. 389, 395–96 (1995). Under res judicata, a final judgment on the merits bars further claims by parties or their privies based on the same cause of action. *See Montana v. United States*, 440 U.S. 147, 153 (1979). Under collateral estoppel, once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation. *See id.*

There is no Supreme Court precedent, or authority from the Ninth Circuit, that has held that a proceeding in which a court may reduce a defendant's sentence if certain conditions are met constitutes a second trial for the purposes of double jeopardy, res judicata, or collateral estoppel. As discussed *supra* in Section III.B.1, the Court is bound by a state court's interpretation of state law, *see Mullaney*, 421 U.S. at 691 n.11, including the California courts' finding that a proceeding pursuant to Section 1170.126 is a hearing to determine whether an inmate is suitable for discretionary relief from his sentence. *See Kaulick*, 155 Cal. Rptr. at 874 (describing resentencing eligibility determination as "discretionary decision [by a court] to decline to modify [an inmate's] sentence in his favor"). Petitioner's Three Strikes Reform Act proceeding was not a new trial on the charges against him, was not a relitigation of any issue decided in Petitioner's favor, and did not result in the imposition of any new punishment. *See id.* Accordingly, the double jeopardy clause, res judicata, and collateral estoppel are inapplicable.

Habeas relief is denied on this claim.

**C.     Certificate of Appealability**

The federal rules governing habeas cases brought by state prisoners require a district court that issues an order denying a habeas petition to either grant or deny therein a certificate of appealability. *See* Rules Governing § 2254 Case, Rule 11(a).

A judge shall grant a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), and the certificate must indicate which issues satisfy this standard, *id.* § 2253(c)(3). "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: [t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Here, Petitioner has not made such a showing, and, accordingly, a certificate of appealability will be denied.

## IV. CONCLUSION

For the reasons stated above, the petition for a writ of habeas corpus is DENIED, and a certificate of appealability is DENIED.

The Clerk shall enter judgment in favor of Respondent and close the file.

**IT IS SO ORDERED.**

Dated: 2/13/2019

_____
HAYWOOD S. GILLIAM, JR.
United States District Judge